UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BRIAN DEWAYNE DARDEN-MOSBY,

    Defendant.
_____/

Case No. 1:20-cr-190-1

HON. JANE M. BECKERING

**OPINION AND ORDER**

In 2020, Defendant Brian Dewayne Darden-Mosby became the target of a United States Drug Enforcement Administration (DEA) investigation, led by Special Agent Alexis Giudice. On September 22, 2021, Defendant was indicted and charged in the Second Superseding Indictment with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances (Count 1), Possession with Intent to Distribute Cocaine (Count 2), and Possession of a Firearm in Furtherance of Drug Trafficking (Count 3). Following a three-day jury trial, Defendant was found guilty of Counts 1 and 2 and acquitted of Count 3 (*see* ECF Nos. 299 & 304). The government seeks forfeiture under 21 U.S.C. § 853 of $130 U.S. currency located in a Chase banking envelope and $112,690 U.S. currency, both seized from Defendant's residence on October 27, 2020.

After the jury returned its verdict, on July 7, 2022, the Court held a hearing on the issue of forfeiture pursuant to Federal Rule of Criminal Procedure 32.2.[1] At the hearing, Defendant

---

[1] Defendant contests forfeiture and requested a hearing under Rule 32.2(b)(1)(B), but waived determination of forfeitability by a jury before they began their deliberations, as set forth in Rule 32.2(b)(5)(A).

1

testified and the parties provided oral argument. The Court ordered the parties to file briefs regarding forfeiture, including addressing the issue of whether the government established by a preponderance of the evidence that all of the property the government seeks to be forfeited was acquired by Defendant during the relevant time period in the Second Superseding Indictment, namely, June to October 2020 (7/8/2022 Order, ECF No. 303; 7/12/2022 Order, ECF No. 308). Both the government and Defendant timely filed briefs (ECF Nos. 315 & 316).

Defendant also filed several sealed exhibits (ECF No. 314), however, Defendant did not move for leave to file the exhibits under seal, instead relying on an unrelated August 5, 2021 Order from this Court (ECF No. 170). Since the documentary exhibits contain a number of financial records, the Court is satisfied that the documents include private information that should not be public at this time, however, no good cause has been shown why the particular documents should be sealed. The Clerk of Court is directed to modify the access of the sealed exhibits (ECF No. 314), with access limited to only the Court, counsel of record for Defendant, and the United States Attorney.

For the reasons that follow, the $112,690 U.S. currency specified in Forfeiture Allegation 1 of the Second Superseding Indictment is ordered forfeited to the United States, and the $130 U.S. currency so specified is ordered returned to Defendant. The government shall file a proposed preliminary order of forfeiture within 14 days of the date of this Order, consistent with this Opinion.

## I.  LEGAL STANDARD

Under Federal Rule of Criminal Procedure 32.2, "[a]s soon as practical after a verdict or finding of guilty" on any count in an indictment where criminal forfeiture is sought, the Court must determine "whether the government has established the requisite nexus between the property and

2

the offense." FED. R. CRIM. P. 32.2(b)(1)(A); *United States v. Jones*, 502 F.3d 388, 391–92 (6th Cir. 2007).

Relevant here,[2] the first forfeiture allegation in the Second Superseding Indictment (ECF No. 185) alleges that the following property is subject to forfeiture under 21 U.S.C. § 853: (i) $130 U.S. currency located in a Chase banking envelope (21-DEA-670348); and (ii) $112,690 U.S. currency (21-DEA-670347). The currency was seized from Defendant's residence on October 27, 2020.

To find the above funds are subject to forfeiture, the government must prove the following elements by a preponderance of the evidence:

1. That the funds constituted or were derived from the proceeds obtained, directly or indirectly, as a result of Defendant's participation in the drug offenses or were used or intended to be used, in any manner or part, to commit or facilitate the commission of the offenses charged in Count 1 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances) or Count 2 (Possession with Intent to Distribute Cocaine), and

2. That there is a nexus between the property alleged to be forfeitable and the offense giving rise to the forfeiture allegation.

(*See* 21 U.S.C. §§ 853(a), 841, 846; FED. R. CRIM. P. 32.2(b)(1) and (2)); *See United States v. Smith*, 966 F.2d 1045, 1050–53 (6th Cir. 1992); *Jones*, 502 F.3d at 391. The Court's determination can be based on the evidence in the record, as well as any additional evidence submitted by the parties and accepted by the Court as relevant and reliable. FED. R. CRIM. P. 32.2(b)(1)(B).

---

[2] As discussed on the record at the forfeiture hearing, the Court's determination is limited to Forfeiture Allegation 1 subparagraph (i) and (ii), concerning the $130 U.S. currency located in a Chase banking envelope and $112,690 U.S. currency seized from Defendant's home (specifically, seized from Defendant's safe, shoe box, and dresser located in his bedroom) on October 27, 2020 (*see* 7/7/22 Forfeiture Tr., ECF No. 306 at PageID.1441). The parties agree that the remaining currency at issue in Forfeiture Allegation 1 is not relevant to the Court's forfeiture determination or was otherwise formally dismissed pursuant to an Order of Partial Dismissal related to dismissed bank fraud charges (*see id.* (subparagraph (iii) related to $2,500 U.S. currency not relevant to Court's determination) and ECF Nos. 273 & 276 (dismissal of subparagraphs (iv) and (v)).

## II. EVIDENCE

During Defendant's jury trial, the government called four witnesses who testified regarding the DEA's investigation of Defendant, and several exhibits were admitted, including numerous text message conversations and recorded telephone calls from the wiretap investigation. Relevant evidence submitted by the government and admitted at trial included:

- Text messages and telephone calls (interpreted by lead DEA case Agent Alexis Giudice) as to the scope of the conspiracy as well as calls between Defendant and co-defendant Jemar Mason involving the procurement and sales of cocaine;
- Testimony from Agent Giudice and Kalamazoo Department of Public Safety Investigator Brett Bylsma that the drug exhibits of cocaine related to co-conspirators and Defendant contained distribution amounts, not user amounts;
- Testimony of Agent Giudice of the search of Defendant's residence on October 27, 2020, which revealed drug ledgers/notebooks related to cocaine and marijuana, a safe containing "a bulk amount" of money, a money counter, currency, and an unregistered firearm and ammunition;
- Testimony of Agent Giudice of the search of Defendant's vehicle, which revealed cocaine and a digital scale;
- Testimony of Investigator Bylsma regarding "tools" and methods commonly used by "drug dealers" to assist in sales, including digital scales, drug ledgers, money counters, and operating in cash;
- Testimony of Grand Rapids Police Department Officer Rick Hebden regarding physical surveillance of Defendant and Jemar Mason's drug sale on August 6, 2020;
- Testimony of Investigator Bylsma interpreting the seized notebooks as drug ledgers; and
- Testimony of DEA Officer Lindsey Moorehead regarding her K9 Nala's search of Defendant's home, where Nala alerted to the shoe box and safe containing currency (indicating traces of narcotics odor), and a backpack containing cocaine.

In addition, the parties stipulated that "text messages between [Defendant] and Kemona Jones … concern cocaine dealing. Specifically, that Ms. Jones was providing cocaine in ounce level quantities at Mr. Mosby's request" (ECF No. 295 at PageID.1413).

Relevant evidence was also submitted by Defendant and admitted at trial concerning Defendant's various business ventures, including Mosby's Popcorn, LLC, settlement money

4

received by Defendant from Rodenhouse Law Group, and testimony from attorney Charles Christopher Newberg regarding the settlement money paid to Defendant.

At the July 7, 2022 forfeiture hearing, Defendant also testified that the money found in his residence came from cashed settlement checks from Christopher Newberg and his law firm, cash withdrawn from inflatable parties related to the Bouncing Palace, LLC, and grant checks or loans received from various entities, including, for example, the City of Grand Rapids (*see* ECF No. 306 at PageID.1445–1452). Defendant also testified that he often dealt in cash related to his business pursuits as a concert promoter, as most artist contracts require payment in cash (*id.* at PageID.1452–1456).

On cross examination, Defendant testified that he had "dealings" and more than one sale of cocaine and marijuana in the summer and fall of 2020; he bought cocaine from Kemona Jones more than once and also bought cocaine from Eric Caldwell; and he sold cocaine to more than one person, including Jemar Mason (ECF No. 306 at PageID.1464–1471). Defendant testified that a September 19, 2020 call with Mason admitted at trial regarding Defendant providing Mason with "one to work" was likely Defendant referencing selling Mason an ounce of cocaine to re-sell (*id.* at PageID.1476). Defendant also testified on cross examination that he was paid in cash for sales of cocaine, and that he was certain that all of the money in his bedroom was from the above-mentioned legitimate sources and that none of it was from drug sales,[3] and that none of the money in his bank accounts was from drug sales (*id.* at PageID.1477–1483). Defendant was also presented with various exhibits of the "drug ledgers" or notebooks admitted at trial and testified

---

[3] Defendant testified that he was certain the money seized from his room was not from selling cocaine, but he "honestly c[ould]n't say if it was or if it wasn't" from selling marijuana (ECF No. 306 at PageID.1481).

5

that some entries related to customers and sale amounts for marijuana, including totals reflecting $35,210 to $73,910 (*id.* at PageID.1483–1493).

In addition, at the forfeiture hearing, the parties stipulated that the funds seized from in and on the dresser in Defendant's home totaled $20,220, as well as to the admission of several documentary exhibits to be submitted by Defendant (*see* ECF No. 306 at PageID.1437–1438). Defendant submitted various documentary exhibits, including bank account statements, tax returns, and exhibits related to various payments made or received and contracts entered into by Defendant (*see* ECF No. 314). Having reviewed the exhibits submitted, the Court finds them relevant and reliable and will consider them together with Defendant's testimony and the evidence in the record from trial.

### III. ANALYSIS

The government argues that the evidence in the record and Defendant's testimony establish that "it is more likely than not" that the U.S. currency found in Defendant's bedroom constituted the proceeds of Defendant's drug dealing, and thus the money should be ordered forfeited (ECF No. 315 at PageID.1739). Specifically, the government argues that Defendant's testimony that "none of the recovered money represented drug proceeds" was not credible because (1) it was implausible that Defendant cashed settlement checks for approximately $100,000 and stored the funds in his bedroom, subject to theft or loss; and (2) Defendant's testimony related to drug dealing and profit, and specifically, his own drug use impeding any profit, was not trustworthy in light of evidence of Defendant's text messages and drug ledgers, which all suggested Defendant was "distributing cocaine for profit" and "selling drugs to make money" (*id.* at PageID.1736–1738). The government also argues that other evidence indicates that the funds are drug proceeds, such as DEA Officer Lindsey Moorehead's testimony that her drug detection canine, Nala, alerted on

6

the shoe box and safe where a bulk of the funds were seized from, indicating drug traces; the seized funds' proximity to drug ledgers, an unregistered firearm, and a money counter; and text messages from Defendant directing customers to pay in cash, all indicating "hallmarks of drug dealing" (*id.* at PageID.1739).[4]

In response, Defendant argues that the government has failed to establish by a preponderance of the evidence the requisite nexus between the offenses of conviction and the property sought to be forfeited under 21 U.S.C. § 853, to wit: the government has not established the subject funds were acquired by Defendant during the relevant time period of June to October 2020 (ECF No. 316 at PageID.1741). Specifically, Defendant argues that "[t]he total amount of drug activity established by admissible evidence is $5,770[,] a far cry from the cash sum of over $100,000 found at [Defendant's] residence" (*id.* at PageID.1746–1747). Defendant arrives at this amount by calculating (1) $4,000 for the sole drug transaction established at trial between Defendant and co-defendant Jemar Mason (Defendant sold two ounces to Mason at $2,000 an ounce on August 6, 2020); and (2) the street value of the 17.7 grams of cocaine seized from Defendant's home and vehicle on October 27, 2020 (17.7 grams at $100 a gram, totaling $1,770) relating to Count 2 (*id.* at PageID.1745–1746). Defendant argues that the trial testimony of DEA Agent Giudice "narrowed the time period for which a nexus must be established" between the money in Defendant's home and Defendant's illegal drug sales to August 5, 2020—when Defendant was first identified by Agent Giudice and became a subject of the investigation—to October 27, 2020 (*id.* at PageID.1745). Defendant argues that the "numerous recorded telephone conversations" between Defendant and Mason during this time period "did not

---

[4] The government did not expressly address the relevant time period in the Second Superseding Indictment (June to October 2020) as related to the required nexus between the alleged forfeitable property and the offenses in Count 1 and 2.

result in any other identifiable drug s[ales]" (*id.* at PageID.1746).  Defendant further argues that there was no evidence that the seized ledgers referenced drug sales during the period of June to October 2020, and that the parties' stipulation that Defendant bought ounces of cocaine from Kemona Jones did not specify a date, and thus "cannot be factored in as drug profit to [Defendant]" during this time period (*id.*).

Defendant also argues that, during the time period of June to October 2020, Defendant "was self employed as owner of Mosby Popcorn, LLC, Bouncing P[a]lace, LLC, Royalty Cleaning, LLC and concert promoter", frequently dealt in cash in his role as a concert promoter, and frequently withdrew or deposited cash received from loans, grants, and settlement checks as part of his legitimate business enterprises (ECF No. 316 at PageID.1741–1745).

The government's argument has merit.

With respect to the $112,690 U.S. currency, the Court determines that the government has presented evidence sufficient to establish the requisite nexus between the cash seized and Defendant's offenses.  A number of facts support this conclusion.  First, the money seized from Defendant's bedroom was concealed in a safe, shoe box, and various different locations in Defendant's dresser, sorted in rubber bands, rather than stored in a bank.  As Agent Giudice and Investigator Byslma testified at trial, this method of storage, subject to theft and loss, and this manner of storing and operating in cash, is consistent with drug dealing.  Second, DEA Officer Moorehead's K9 alerted to traces of narcotics on the currency found in both the safe and shoe box.  Third, the money was located in close proximity to an unregistered firearm, a money counter, cocaine, and notebooks containing shorthand suggesting drug sales and high dollar amounts for sales of marijuana.  Last, telephone calls, text messages, and stipulations admitted at trial showed that Defendant was engaging in drug sales for profit.  As such, the Court finds as a matter of fact

8

that Defendant's testimony that none of the cash seized from his bedroom was related to sales of drugs is not credible.

Therefore, the Court determines that the government has provided sufficient evidence to establish, by a preponderance of the evidence, the requisite nexus that the bulk currency of $112,690 seized from Defendant's residence constituted or was derived from the proceeds obtained, directly or indirectly, as a result of Defendant's participation in the drug offenses charged in Count 1 and 2, or was used or intended to be used in any manner or part to commit or facilitate the offenses in Count 1 and 2, and that a specific nexus between the subject funds and the offenses exists. *See* 21 U.S.C. § 853(a)(1) and (2).

Even if the government had not met its burden through its presentation of evidence, a different result is not warranted based on review of Defendant's own evidence and testimony. Defendant's evidence and testimony show that Defendant was more than familiar with the banking system and that he actively used bank accounts to deposit and withdraw money. Defendant testified at the forfeiture hearing that he was dealing drugs during the relevant time period and was paid in cash. Further, Defendant's testimony rebuts his argument that the sales were limited to only one sale to Mason on August 6, 2020 and to the 17.7 grams of cocaine recovered from his residence and vehicle, as he testified that he engaged in more than one drug sale during this time period and bought or provided cocaine to more than one individual (ECF No. 306 at PageID.1464–1471).

Defendant also presented multiple documentary exhibits demonstrating other sources of legitimate income over the course of approximately three years, however, the Court is unable to determine that the income received in the past is the same currency seized from his residence, or that the currency seized from his residence is from these legitimate sources and not related to the

criminal activity. For instance, Defendant provided bank statements indicating several withdrawals of varying amounts of cash totaling approximately $47,450.00 from January 2019 to October 2020 (*see* ECF No. 314 at PageID.1726–1735).[5] However, none of the cash seized from Defendant's shoe box or dresser was found with bank envelopes, receipts, or documentation to suggest its legitimate source. There are no indications on the provided bank statements that the cash withdrawals were tied to a certain grant, check, or deposit, by amount or date of withdrawal, despite Defendant's testimony that his bank accounts clearly reflected check deposits and cash withdrawals for exact or related amounts to legitimate sources of income.[6] The settlement check payments from Rodenhouse Law Group totaled $90,039.99 and were distributed to Defendant between June 2018 and February 2019 (*see id.* at PageID.1551–1558). While the safe did contain over $60,000, some large amounts in Chase bank envelopes—at best—the Court can conclude only that Defendant commingled his legitimate cash funds with proceeds of his illegal activity. Despite Defendant's numerous records, the Court has no evidence which suggests the bulk currency seized from Defendant's house was tied to any of the legitimate sources of income. To the contrary, the government presented ample evidence which shows that the currency, even if the funds were partially from legitimate sources, had a specific nexus to the convicted drug offenses in that it is more likely than not that the bulk cash funds were used, or intended to be used, in any manner or part, to commit or to facilitate the illegal distribution of drugs. Under 21 U.S.C § 853(a)(2), if the money had been used in any part as seed money to facilitate the commission of

---

[5] In addition, the examples of cash withdrawals indicate only handwritten notes as to its use (which are presumably in Defendant's handwriting with no indication as to when the notes were written), such as "money that was in room", "lawsuit money", or "took out 4 myself" and the notes are thus not reliable (*see* ECF No. 314 at PageID.1726–1735).

[6] For example, when asked by defense counsel, "So if I ordered your records from Chase Bank, would I be able to discern what dates the checks went in and verify by record to the Court when it — the funds came back out?" Defendant answered "Yes, sir" (ECF No. 306 at PageID.1452).

the drug transactions during the relevant time period, the money is subject to criminal forfeiture. K9 Nala's alerting to the cash-filled shoe box and safe, having been trained to alert to traces of narcotics odor, further indicates that Defendant used at least a part of that money to commit or facilitate the offenses for which he was convicted.

However, with respect to the $130 U.S. currency located in a Chase banking envelope (or pouch) and seized from Defendant's residence, the Court is not convinced that this money is sufficiently tied to Defendant's criminal activity. Defendant testified that this money, and the till accompanying it, was from his business's bank account and used by his business, Mosby's Popcorn, LLC, to attend the farmer's market (ECF No. 306 at PageID.1459, 1461–1462). In the government's photograph exhibit 1a and 1b admitted at trial, accompanying the till and Chase envelope/pouch is a State of Michigan Department of Agriculture & Rural Development food establishment license. This currency is thus distinguishable from the bulk currency seized from Defendant's residence and suggests the money's legitimate source and use. The government has not shown otherwise.

### III.  CONCLUSION

**IT IS HEREBY ORDERED** that pursuant to 21 U.S.C. § 853, because the government has demonstrated by a preponderance of the evidence the requisite nexus between the $112,690 U.S. currency and the offenses of conviction, this money shall be forfeited as proceeds of illegal activity.

**IT IS FURTHER ORDERED** that the $130 U.S. currency located in a Chase banking envelope be returned to Defendant.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to modify the access of the sealed exhibits (ECF No. 314), with access limited to only the Court, counsel of record for Defendant, and the United States Attorney.

**IT IS FURTHER ORDERED** that the government shall submit, <u>no later than 14 days from the date of this Order</u>, a proposed preliminary order requiring forfeiture of the subject funds, consistent with this Court's ruling.

Dated: August 16, 2022  /s/ Jane M. Beckering
JANE M. BECKERING
United States District Judge